UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLINTON D. PEDERSON,<br><br>        Plaintiff,<br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant;<br><br>   <u>*and*</u><br><br>LEANNE MCGILL<br><br>        Plaintiff,<br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | CASE NOS. 3:18-cv-05988-RJB<br><br><br><br><br><br><br><br>AND 3:18-CV-5338-RJB<br><br><br>ORDER ON DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT REGARDING<br>LEEANN MCGILL'S COMPLAINT |

     This matter comes before the Court on the Defendant United States' Motion to Exclude (Dkt. 56) and Motion for Summary Judgment regarding Plaintiff Leeann McGill's Complaint (Dkt. 49). The Court has reviewed the pleadings filed regarding the motions and is fully advised.

1    This case arises from a motor vehicle collision which occurred when Jose Caywood, an

2    employee of the United States, Department of the Interior and the Bureau of Indian Affairs, hit

3    Plaintiff Clinton Pederson's vehicle, that, in turn, hit Plaintiff Leanne McGill's vehicle on State

4    Route 12. Dkt. 1. The United States now moves for summary judgment on Ms. McGill's claim

5    for negligence, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

6    ("FTCA"), arguing that Ms. McGill cannot meet her burden of showing that the motor vehicle

7    accident was the proximate cause of her claimed injury (Complex Regional Pain Syndrome

8    ("CRPS")). Dkt. 49. For the reasons provided below, the motion to exclude (Dkt. 56) and the

9    motion for summary judgment (Dkt. 49) should be denied.

## I.    FACTS RELEVANT TO THE MOTION

The motor vehicle accident occurred on January 3, 2017. Dkt. 1. Ms. McGill states that, right after the accident, she got out of her car and checked on Mr. Pederson. Dkt. 50-1, at 8. She called 911. *Id.* The paramedics arrived, but she was not medically evaluated and did not go to the hospital. *Id.* A little after the accident, Ms. McGill had pain in her right shoulder and arm and a burning in her wrist. Dkt. 50-1, at 9. She states that she also had "normal aches and pains in [her] back and in [her] legs] like [she] had gotten in a car accident, but . . . it seem normal" to her. Dkt. 50-1, at 9.

Ms. McGill returned to work for over a week; she worked in an assisted living facility. Dkt. 50-1 at 4. She states that she was able "push through normal 'I just got in a car accident' aches and pains" initially. Dkt. 50-1, at 4. On January 15, 2017, however, she was helping a resident of the care facility stand, when "all of a sudden, [her] arm went completely numb, fell to [her] side, and it was like it wasn't there." Dkt. 50-1, at 4. She states that her arm "turned into nothing but excruciating pain, shooting completely up to [her] shoulder." Ms. McGill states that

she "talked to one of the nurses that were [sic] on duty at the time, and [her] forearm was actually swollen two to three times its size, and that's when [the nurse] told [Ms. McGill] that she needed to go to the [emergency room]." Dkt. 50-1, at 5. The nurse on duty at the care facility sent Ms. McGill home. *Id.*

On January 17, 2017, Ms. McGill went to the emergency room. Dkt. 50-1, at 8. The treatment notes from the emergency room provide, in part:

> Chief Complaint: Motor Vehicle Crash . . . Patient does have pain to forearm with intermittent tingling to hand. States when she went to go bowling the other day had pain shooting up her entire arm. Also with increase pain when she is trying to move her patients at work.

Dkt. 50-2, at 3. Her doctor indicated that she should be excused from work for two days. *Id.*

On January 19, 2017, Ms. McGill was seen at the Washington Orthopedic Center. Dkt. 50-3, at 2. The assessment was, "[r]ight forearm pain and swelling and hand numbness and tingling two weeks after a motor vehicle accident. The exact etiology is unclear." *Id.* Nerve conduction testing was ordered. *Id.* She was released to return to work on January 20, 2017. Dkt. 50-3, at 7.

The nerve conduction test results were essentially normal. Dkt. 50-7, at 6. Ms. McGill received treatment from a chiropractor late January 2017 through July 2017. Dkt. 50-4. She was assessed by Douglas Taylor, M.D. on March 31, 2017, and at his recommendation, received a right stellate ganglion block on April 24, 2017, for "likely [CRPS]." Dkt. 50-5, at 3-8. At a follow-up exam, Ms. McGill reported that she did not get any benefit from the block. *Id.* Dr. Taylor ruled out CRPS as the cause of her pain because the procedure did not give her relief. Dkt. 50-5, at 4.

On May 28, 2018, Ms. McGill was examined by Thomas L. Gritzka. Dkt. 50-4, at 2. Dr. Gritzka's report indicates that after the accident, "she attempted to continue working" as a

"caregiver at a residence and assisted living facility." Dkt. 50-4, at 3. He discussed her medical history and diagnosed her with "[CRPS] type 1, right shoulder girdle," which he opined is "more probable than not due to the motor vehicle accident of January 3, 2017." Dkt. 50-4, at 10. He noted that she "sustained a mechanism of injury which as she described it started with wrist pain and was the result of jamming or extending her right arm locked against a steering wheel in full extension." Dkt. 50-4, at 10.

At his deposition, Dr. Gritzka testified that he was not aware, based on her medical records or Ms. McGill's report to him, of any other incidents or events that occurred related to her right arm before receiving medical treatment on January 17, 2017. Dkt. 50-7, at 5-6. As to Ms. McGill's condition, Dr. Gritzka testified that:

> Well, she suffers from a condition that is diagnosed really more or less by jargon. I mean, exactly what complex regional pain syndrome is, is a medical dispute, but symptoms similar to what she has could be called other things. It could be called a peripheral nerve and centralization phenomenon. It also could be called a neuropathic pain syndrome. And these all more or less describe the same thing, which is basically that somebody has a shoulder -- has a pain complaint that appears to be related to some condition, but the exact pathoetiology or condition is unclear. So, you know, depending on what medical specialty group you live with, you might call it something else. The reason I picked the complex regional pain syndrome as the most likely condition is because – was because, first of all, the mechanism of injury. Complex regional pain syndromes are bizarre in that they usually start with something that initially seems kind of trivial, and then they kind of crescendo into a more difficult, larger problem. And so that's kind of the story I got from her. It started out with a wrist problem, and then it sort of rapidly spread and involved the entire right shoulder girdle. . . .

Dkt. 57-1, at 5-6. When asked if he knew of no other intervening event or incident that would cause her injury, Dr. Gritzka testified, "[n]one that she told me about. That's right." Dkt. 57-1, at 6. Dr. Gritzka testified that he read the defense expert, Dr. Steven Stanos', report. Dkt. 54-4, at 4. Dr. Gritzka testified that "in Dr. Stanos' report he said that she's had this accident – been involved in this collision, and then had a workers' comp[ensation] claim about two weeks later,

1 | which . . . if that occurred, . . . [Dr. Gritzka didn't] know where that information came from." Dkt. 54-4, at 4.

Ms. McGill asserts that she provided Drs. Gritzka and Santos an accurate description of how her arm went numb while she was at work on January 15, 2017. Dkt. 52, at 2. In a declaration filed in response to the motion for summary judgment, Dr. Gritzka states that Ms. McGill "may have told [him] about the work event" but states that the "event is not noteworthy and does not factor into [his] evaluation and/or opinion." Dkt. 53, at 2.

On May 16, 2017, Ms. McGill filed for Social Security Disability Insurance Benefits. Dkt. 50-6. Her application states that January 15, 2017, was the date that her condition became severe enough to keep her from working. *Id.*, at 2.

Ms. McGill states that her "right arm is in constant pain and [she] cannot use it." Dkt. 52, at 2.

## II. DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. MOTION TO STRIKE DR. GRITZKA'S DECLARATION

Fed. R. Civ. P. 37 (c)(1), provides that "[i]f a party fails to provide information or identify a witness as required Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified."

The United States moves to exclude Dr. Gritzka's declaration (Dkt. 53), arguing that it is a supplement to his report. Dkt. 56. For the purposes of this motion alone, the United States' motion (Dkt. 56) to exclude Dr. Gritzka's declaration (Dkt. 53) should be denied. The declaration did not attempt to correct inaccuracies or fill in an incomplete report. He provided

some background and clarifying material, similar to what would be covered on cross-examination, and the Declaration of Dr. Thomas L. Gritzka in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 53) was not essential to the decision on the motion for summary judgment.

### C. PLAINTIFF MCGILL'S CLAIM FOR NEGLIGENCE UNDER THE FTCA

The FTCA is the exclusive remedy for state law torts committed by federal employees within the scope of their employment. 28 U.S.C. § 2679(b)(1). The FTCA is a limited waiver of sovereign immunity, rendering the United States liable for certain torts of federal employees. *See* 28 U.S.C. § 1346(b). The FTCA provides,

> Subject to the provisions of chapter 171 of this title, the district courts, . . ., shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Under Washington law, to establish a claim for negligence, "a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Ranger Ins. Co. v. Pierce Cty.*, 164 Wn.2d 545, 552 (2008)(*internal quotation marks and citations omitted*). "Washington recognizes two elements to proximate cause: cause in fact and legal causation." *Lowman v. Wilbur*, 178 Wn.2d 165, 169 (2013)(*internal quotation marks and citations omitted*).

At issue in this motion is whether the Plaintiff can meet the fourth element – proximate cause, specifically, whether Ms. McGill has sufficient evidence of "cause in fact."

1     "Cause in fact refers to the but for consequences of an act—the physical connection between an act and an injury." *Dunnington v. Virginia Mason Med. Ctr.*, 187 Wn.2d 629, 636 (2017)(*internal quotation marks and citations omitted*). "Medical facts must be proved by expert testimony unless they are observable by laypersons and describable without medical training." *Berger v. Sonneland*, 144 Wn.2d 91, 111 (2001). "To remove medical issues from the realm of speculation, the medical testimony must demonstrate that the alleged negligence 'probably' or 'more likely than not' caused the harmful condition leading to the injury." *Conrad ex rel. Conrad v. Alderwood Manor*, 119 Wn. App. 275, 282 (2003).

    The Motion for Summary Judgment (Dkt. 49) should be denied. Cause in fact is ordinarily a question left to the fact finder. *Dunnington*, at 636. Even though Dr. Gritzka opines that Ms. McGill's "[CRPS] Type 1, right shoulder girdle," is "more probable than not due to the motor vehicle accident of January 3, 2017," (Dkt. 50-4, at 10) the United States asserts that Dr. Gritzka's opinion was not based on complete information. Dkts. 49 and 56. It maintains that Dr. Gritzka did not know about the intervening cause of Ms. McGill's injury, the workplace event on January 15, 2017, and so his opinion is not sufficient to show that the accident proximately caused Ms. McGill's injuries. *Id.*

    The Plaintiff has pointed to sufficient issues of fact to preclude summary judgment. Dr. Gritzka reviewed Ms. McGill's medical records and Dr. Stanos' report, both of which discussed her workplace injury on January 15, 2017. The United States' view, that there was an intervening cause of Ms. McGill's injury, a is disputed issue of fact between two experts. The motion (Dkt. 49) should be denied.

### III. ORDER

**IT IS ORDERED THAT:**

- The United States' Motion to Exclude (Dkt. 56) **IS DENIED**; and
- The United States' Motion for Summary Judgment regarding Plaintiff Leeann McGill's Complaint (Dkt. 49) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 30th day of September, 2019.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge